**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

THE ESTATE OF C.A., A MINOR CHILD,   §
DECEASED, *et al.*,   §
  §
       Plaintiffs,   §
  §
v.   §    CIVIL ACTION NO. H-10-00531
  §
TERRY B. GRIER, SUPERINTENDENT OF   §
THE HOUSTON INDEPENDENT SCHOOL   §
DISTRICT, IN HIS OFFICIAL CAPACITY,   §
*et al.*,   §
  §
       Defendants.   §

**MEMORANDUM AND OPINION**

The plaintiffs in this suit under 42 U.S.C. § 1983 are the estate and parents of C.A., who drowned at the public high school he attended during a science project conducted in the school's swimming pool. The defendants included not only the Houston Independent School District ("HISD") but also individual school employees. In an earlier ruling, this court granted the employees' motion for summary judgment on qualified immunity. (Docket Entry No. 97). Several other defendants settled or were otherwise dismissed, leaving HISD as the only defendant. HISD has moved for summary judgment. (Docket Entry No. 116). The plaintiffs responded, (Docket Entry No. 132), and HISD replied, (Docket Entry No. 135).

Based on the pleadings; the motion, response, and reply; this court's prior opinions and orders; the summary-judgment record; and the relevant law, this court grants HISD's motion for summary judgment. Because this ruling resolves all claims against the remaining defendant, final judgment is entered by separate order. The reasons for these rulings are explained below.

I.      **Background**

The factual background in this case was largely explained in this court's earlier opinion on qualified immunity.  (*See* Docket Entry No. 97).  The present summary-judgment record is substantially similar to the evidence before this court when it issued that opinion.[1]  Only a brief account of the background facts is needed here.

In 2008, C.A. was a senior at HISD's Westside High School.  He was enrolled in Vanessa Coronado's physics class.  (Docket Entry No. 68, Ex. 1, ¶ 6).  Another physics teacher at the school, Troy Gillespie, had designed a buoyancy experiment and classes in past years had conducted it without incident.  (*Id.*, ¶¶ 3–4).

The two teachers decided to include the experiment in the spring 2008 curriculum.  (*Id.*, ¶ 3). The experiment called for teams of three to four students to build a boat using cardboard and duct tape.  (*Id.*, ¶¶ 4–5).  After the boats were built, the pool part of the experiment took place.  The teams took turns in the school swimming pool testing the buoyancy of the boat the team had built.  The experiment took place in the shallow end of the pool.  One or more students from the team would be in the boat and another student would be in the pool walking and holding the boat to guide it across the pool.  (*Id.*, ¶¶ 5, 8–9).

The pool part of the experiment was scheduled for April 10, 2008.  During the planning leading up to the experiment, Gillespie and Coronado took steps to make the experiment safe.  The steps included having the pool supervised by a swim-team coach; having the boats and students stay in the shallow end; and instructing students who could not swim that they should not be in the pool

---

[1]  The plaintiffs included several new exhibits to their response, consisting mainly of expert reports.  HISD filed objections to the new documents.  (Docket Entry No. 135, Ex. A).  Because this court grants summary judgment for HISD, the objections are overruled as moot.

at all.  (*Id.*, ¶ 3).  Students who could not swim were given alternative ways to participate with no adverse effect on their grade.

Coronado also sent two emails before the date scheduled for the experiment to notify the parents.  The emails told the parents to contact her with any questions.  Coronado did not require the students to bring signed permission slips for various reasons, including that the students were all juniors or seniors, beyond the age at which permission slips were customary.  (*Id.*, ¶ 6).  C.A.'s mother received the email from Coronado and responded by saying that C.A. was excited about the project.  C.A.'s mother made no reference to her son's inability to swim or to any concern about his being in the pool.  (Docket Entry No. 68, Ex. 1-D).

C.A. could not swim.  The plaintiffs allege that C.A.'s parents had communicated this fact in a 2005 "preparticipation physical evaluation form" sent to the school's athletic department.  This form stated that C.A. should not participate in swimming or diving sports.  (Docket Entry No. 132, Ex. F).[2]  The evidence is undisputed that as a science teacher, Coronado would not have received or seen documents directed to the athletics department.  The evidence is undisputed that Coronado did not know that C.A. could not swim.  Besides the fact that Coronado did not see the 2005 form, C.A. did not tell her anything about his inability to swim, and his family did not tell her in response to the email she sent.  (Docket Entry No. 68, Ex. 1, ¶ 11).  It is also undisputed that before the experiment began, Coronado instructed her students not to go in the pool if they could not swim.  (*Id.*, ¶¶ 8, 11).

The evidence shows that in preparing her students for the pool experiment, Coronado went

_____

[2]  HISD objects to this document on the ground that the plaintiffs have not authenticated it.  (Docket Entry No. 135, Ex. A).  To consider it does not affect the outcome.  HISD's objection is overruled as moot.

over the safety rules in class. Coronado told all the students to remain in the shallow end of the pool so that if they fell out of the boats, they would be able to stand in the pool with their heads above water. (*Id.*) Coronado also told her students who could not swim not to get into the pool. C.A. did not tell her he could not swim or join those students who were participating in ways that did not require them to get into the pool. (*Id.*) The evidence shows that several of C.A.'s classmates did not take part in the experiment because they did not want to get into the pool. These classmates engaged in such substitute activities as participating in the school's blood drive that was held the same day as the experiment. (*Id.*, ¶¶ 9–10).

The day of the experiment, Coronado again talked to the students about safety before they went to the swimming pool. Coronado again told all the students to stay in the shallow end and not to go into the deep end. She repeated her prior instruction that if any student could not swim, he or she should stay out of the pool. (*Id.*, ¶ 11).

The physics teachers had arranged to have individuals trained in water safety present at the pool during the experiment to supervise. Coronado herself had a strong background in water safety. She had been a certified lifeguard in college, although her certification had lapsed by the time C.A. drowned. (*Id.*, ¶ 1). Gillespie had also arranged for the school's swim coach, Craig Sikkema, to be at the pool during the experiment. (*Id.*, ¶ 12). Although Sikkema was not a certified lifeguard, he had extensive training and experience in water safety. (Docket Entry No. 68, Ex. 3, ¶¶ 1–4). It is undisputed that Sikkema was present during the experiment itself, watching the pool. He left, however, when the experiment was over and the cleanup had begun. (*Id.*, ¶¶ 6–7). C.A. drowned during the cleanup.

The undisputed evidence shows that C.A. disregarded the instructions he previously had been

4

given by getting into the pool in the first place, despite his inability to swim.  There is evidence that while he was in his team's boat, C.A. told one of the other students he could not swim.  (Docket Entry No. 88, Ex. C, at 54, 67).  But there is no evidence that C.A. or anyone else relayed this information to Coronado or any other adult at the pool.

The boat C.A. and three other students on his team were in capsized during the experiment.  C.A. was able to jump out, stand in the shallow end while the boat was carried out of the pool, and exit the pool safely.  (*Id.* at 54).  A security-camera videotape recording of the experiment and the cleanup period shows that after C.A. had left his boat, some students began splashing each other and engaging in "horseplay."  C.A. was one of the students splashing but staying in the shallow end.  As the teams finished, some of the students began doing "cannonball" jumps into the pool.  C.A. was not among them.  The videotape shows that C.A. was then out of the pool, walking on the side, and stopping to talk with some students and with Coronado.  (Docket Entry No. 88, Ex. F).  The evidence up to this point is largely undisputed.

There are factual disputes about some of the events shortly before C.A.'s death.  The primary disputes involve whether, after the experiment ended and the boats were out of the water, Coronado in some fashion gave permission to some students to jump into the deep end of the pool, or whether these students simply did so of their own accord.  The videotape recording is only visual; there is no audio.  (*Id.*)

The plaintiffs submitted statements by some of the students present.  Some of these students stated that after the experiment was over, they asked Coronado if they could jump in the deep end, and she permitted them to do so as long as they stayed off the diving board.  (Docket Entry No. 88, Ex. C, at 55, 57, 62, 74).  Other students stated that Coronado's permission was explicitly limited

5

to those students who knew how to swim well.  Yet other students stated that Coronado gave permission only to be in the shallow end, not in the deep end.  (*Id.* at 60, 66, 70, 77, 81).  Coronado testified that she did not recall anyone asking for her permission to swim or jump into the deep end and that she never gave any of the students permission to do so.  (Docket Entry No. 68, Ex. 1, ¶ 16).

Permitted or not, some of the students began jumping into the deep end.  C.A. was among them.  C.A. did not surface after he jumped into the deep end.  The other students left the pool area without noticing that C.A. was still in the water.  The time markings on the videotape showed that some students jumped into the pool at 2:40 p.m.  Sikkema had left the pool area at 2:36 p.m. because the experiment was over.  At 2:44 p.m., Sikkema had returned and was talking to another student near the southwest corner of the pool area when they noticed something on the pool bottom.  Coronado and the student with Sikkema both dove in and pulled C.A. from the water.  (Docket Entry No. 88, Ex. F).  Paramedics were promptly called and attempted to resuscitate C.A., then took him to the hospital, where he was declared dead.

C.A.'s estate and parents sued, among others, Coronado; Westside's principal, Paul Castro; and the HISD superintendent in his official capacity.  (Docket Entry No. 1).  In the third amended complaint, the plaintiffs asserted Fourteenth Amendment violations under 42 U.S.C. § 1983.  (Docket Entry No. 45).[3]  Castro and Coronado moved for summary judgment that they could not be liable in their individual capacities because of qualified immunity.  (Docket Entry No. 68).  On September 6, 2011, this court granted Castro and Coronado's motion.  A summary of the basis for the ruling is that "the plaintiffs' complaint essentially presents a state-law claim for gross

---

[3]  The plaintiffs also asserted state-law claims, which were later withdrawn.  (Docket Entry No. 64).

negligence, not a § 1983 claim for a violation of constitutional rights." (Docket Entry No. 97, at 13). On October 11, 2011, this court also entered an order dismissing the claims against the HISD individual employees in their official capacities as duplicative of the claims against HISD. (Docket Entry No. 103).

HISD has now moved for summary judgment. (Docket Entry No. 116). HISD argues that under clear law in this and other circuits, based on the undisputed facts and taking the disputed facts in the light most favorable to C.A., the plaintiffs cannot show a violation of C.A.'s constitutional rights. (*Id.* at 7). Citing *Doe ex rel. Magee v. Covington County School District*, 675 F.3d 849 (5th Cir. 2012) (en banc), HISD argues that it may have had a state-law duty to protect C.A. from the harm he suffered, but it had no federal constitutional duty to do so. (*Id.*) HISD argues that the plaintiffs cannot as a matter of law prevail on a claim that it violated C.A.'s due process rights under the Fourteenth Amendment. (*Id.* at 11–14).

In their response, the plaintiffs argue:

> Even though state rules, City of Houston Municipal Codes and the school district's own "Standard Practice Memorandum[ ]" ("SPM") required a lifeguard to be present, there was none. Even though these same standards required a person skilled in water safety to be present when students were in the swimming pool, there was no such supervision. Even though C.A.'s parents filled out a Houston ISD participation form directing that C.A. not participate in swimming or diving, he was taken to the Westside High School pool and was not restricted from entering the water in any way. In fact, the teacher, Ms. Coronado, was specifically asked by a number of students if they could swim and jump into the pool, and she gave each one of them permission to do so. For these and other reasons outlined below, Defendant's motion should be denied.

(Docket Entry No. 132, at 1). The plaintiffs assert that the videotape shows that "[t]here is no adult within view" when C.A. jumped into the water and failed to emerge, and that "there is no lifeguard anywhere near the pool during the experiment." (*Id.* at 3). The plaintiffs argue that they can show

that HISD is liable for a constitutional violation under the state-created danger theory because "C.A. was at no risk of drowning prior to Defendant bringing him to the school natatorium for a class project." (*Id.* at 5). According to the plaintiffs, HISD created and amplified that risk when "C.A. and other students were given express permission to jump in the deep end." (*Id.*) The plaintiffs argue that HISD was deliberately indifferent because it knew C.A. could not swim yet brought him to the natatorium, failed to obtain specific parental consent for him to enter the pool, failed to have a lifeguard present, authorized him to jump in the deep end, and failed to have a defibrillator near the pool. The plaintiffs also argue that disputed facts and the inferences they support preclude a summary-judgment finding of no municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The parties' arguments and responses are analyzed below.

## II.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536,

540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## III.   Analysis

A court faced with a claim that a school district is liable for a student's injury or death examines whether the harm to that student was caused by a constitutional violation and, if so, whether the school district is responsible for that violation. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). The Fifth Circuit has "stated time and again that without an underlying constitutional violation, an essential element of [school district] liability is missing." *Covington*, 675 F.3d at 866–67. Physical injury to, or death of, a student violates due process in two limited circumstances: (1) the plaintiff's physical injury was inflicted by a state actor — such as a school

9

employee — or (2) the plaintiff's injury was inflicted by a private actor, but the plaintiff had a "special relationship" with the State that gave rise to a duty to protect the plaintiff from the private actor. *Id.* at 855–56. As a matter of law, "[n]o . . . special relationship exists between a public school and its students." *Id.* at 870 (Jolly, J., specially concurring) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).

In *Covington*, the Fifth Circuit considered whether the plaintiff adequately alleged a violation of a constitutional right. School personnel allowed a nine-year old girl to "check out" with a man not authorized to take the child out of school. The man molested the child six separate occasions. *Id.* at 853 (majority opinion). As the Fifth Circuit explained, the plaintiff's constitutional claim was based not on the molestation, "but rather upon the school's allegedly deficient check-out policy, which allowed the molestation to occur" because it did not require school officials to verify the identity of individuals before releasing children into their custody. *Id.* at 855. Finding that the school district defendants had no constitutional duty to protect the plaintiff from a private actor, the Fifth Circuit determined that the plaintiff failed to allege a violation of any constitutional right. *Id.* at 863. The Fifth Circuit clarified that a school district's duty to protect a student depends on the existence of a special relationship, which as a matter of law did not exist between a school district and a student.

The plaintiffs do not allege that a state actor injured C.A. The plaintiffs do claim that HISD's failure to ensure that C.A. could swim before allowing him access to the pool, to obtain C.A.'s parents' specific permission for him to use the pool, to have adequate adult supervision over the pool while students were in it, to have a lifeguard present, to prevent the students from going to the deep end, to call 911 fast enough, and to have a defibrillator on hand, all contributed to result

in C.A.'s drowning.  Assuming that the record would support an inference that taken together, at least some of these failures contributed to cause C.A.'s death, that does not preclude summary judgment on the constitutional claim against HISD.  The record shows that, as a matter of law, HISD had no special relationship with — and no constitutional duty to protect — C.A.  *See id.* at 855–57; *see also Estate of Brown v. Cypress Fairbanks Indep. Sch. Dist.*, 863 F. Supp. 2d 632, 636 (S.D. Tex. 2012) ("*Covington* makes clear that any duty to protect must be moored to a special relationship.").  Absent that relationship and duty, the evidence outlined above, including evidence showing a failure to comply with HISD's own policies governing pool use, could not, as a matter of law, have resulted in a deprivation of C.A.'s due process rights.  *See Covington*, 675 F.3d at 855–57.

The same clear law makes the plaintiffs' reliance on municipal liability under *Monell v. Department of Social Services* unavailing as well.  In *Covington*, the court rejected the claim that the school's allegedly ineffective policy of allowing even very young students to check out and leave the school with adults other than their parents or other caregivers authorized in the school's records gave rise to municipal liability under *Monell*.  "[E]ven if the ineffective check-out policy was the moving force behind Jane's injury, there can be no § 1983 liability unless Jane suffered a constitutional violation."  675 F.3d at 866–67.  Because no constitutional violation was present, the existence of causation did not state a § 1983 claim.

The plaintiffs' reliance on the state-created danger theory is also unpersuasive.  The law on the limits of this theory is clear in this circuit, and was recently addressed in a case involving facts similar to this case in the Seventh Circuit.  Under this circuit's law,

> [T]he state-created danger theory of liability is derived from language in the
> Supreme Court's decision in *DeShaney v. Winnebago County Department of Social*

*Services*, 489 U.S. 189 (1989). . . :

> While the State may have been aware of the dangers that [the victim] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. . . . [The State] placed him in no worse position than that in which he would have been had it not acted at all.

*Dixon v. Alcorn Cnty. Sch. Dist.*, 2012 WL 6019053, at *2 (5th Cir. Dec. 4, 2012) (per curiam) (alterations in original).  The Fifth Circuit "has consistently refused to adopt the state-created danger theory."  *Id.* (citing *Covington*, 675 F.3d at 865; *Kovacic v. Villareal*, 625 F.3d 209, 214 (5th Cir. 2010)).

The plaintiffs acknowledge this fact but argue that C.A.'s case is the opportunity for this circuit to apply the theory for the first time.  The Fifth Circuit has stated the elements that such a cause of action would require if it was recognized.  A plaintiff would have to show "(1) that the environment created by the state actor is dangerous, (2) the state actor must know it is dangerous (deliberate indifference), and (3) the state actor must have used its authority to create an opportunity that would not otherwise have existed for the third party's crime to occur."  *Id.* (citing *Covington*, 675 F.3d at 865).  "Critically, [the Fifth Circuit] has explained that the 'state-created danger theory is inapposite without a known victim.'"  *Covington*, 675 F.3d at 865 (quoting *Rios v. City of Del Rio*, 444 F.3d 417, 424 (5th Cir. 2006)).

Given these elements, the present case would not appear to provide the right vehicle for the Fifth Circuit to adopt the state-created danger doctrine.  The plaintiffs would fail to satisfy one or more of the necessary elements suggested in *Covington*.  The record shows that the plaintiffs cannot show a basis to support the inference that HISD knowingly created a risk that C.A. would drown, as opposed to creating a general risk for students who could not swim or could not swim well.  "As

our cases illustrate, the state-created danger theory requires a known victim, and the fact that a school's policy or procedure presents a risk of harm to students in general is inadequate to satisfy this requirement." *Dixon*, 2012 WL 6019053, at *3. The plaintiffs describe what the record shows: a pool is inherently dangerous to a nonswimmer and is made more dangerous if effective adult supervision, a lifeguard, and defibrillators are not present. The law is clear, however, that the existence of a dangerous environment is not a state-created danger. The plaintiff must establish that the state created an environment dangerous specifically to a known victim for a known reason, not a generalized risk. *See Covington*, 675 F.3d at 865–66; *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 249–50 (5th Cir. 2007); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc). The dangers the plaintiffs describe and that the record shows could apply to any nonswimmer, not to C.A. specifically, and no evidence shows that HISD knew the pool was dangerous specifically to C.A.

The plaintiffs do not argue that HISD actually knew that Coronado knowingly gave a student who could not swim permission to jump into the pool's deep end.[4] Instead, the plaintiffs base their argument that this case meets the "known victim" requirement on a Tenth Circuit case stating that the victim need not be specifically identifiable, but only a member of a discrete and identifiable group of potential victims. (Docket Entry No. 132, at 10 (citing *DeAnzona v. City & County of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000) (requiring that the plaintiff be a member of "'a limited

---

[4] The plaintiffs assert that "the defendant knew that C.A. was in the natatorium, and knew that C.A. was intending to jump into the deep end of the pool, and knew that C.A.'s parents had explicitly requested that he not be permitted to swim or dive." (Docket Entry No. 132, at 11). This court does not read the plaintiffs' assertion to allege that HISD had actual knowledge that Coronado was knowingly permitting known nonswimmers to jump in the pool's deep end. To the extent the plaintiffs mean to argue actual knowledge, that argument is not supported by the record for the reasons explained below.

and specifically definable group . . . at substantial risk of serious immediate, and proximate harm.'" (quoting *Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1262 (10th Cir. 1998)))). The *Covington* court did not adopt such a broad potential application of the state-created danger theory. As explained in *Covington*, the state-created danger theory, if it were to be recognized, would require knowledge of risk to a specific and known victim, not merely knowledge of risk to an identifiable group of potential victims, as the plaintiffs argue.

Even if the Fifth Circuit were to adopt the test the plaintiffs advance, the plaintiffs would fail to satisfy it. The plaintiffs argue that C.A. was part of a limited, specifically identifiable group of students: those given explicit permission to jump in the pool's deep end.[5] The plaintiffs argue that there is summary-judgment evidence showing that six students jumped in the pool, and that Coronado gave at least some of those students express or implied permission to jump in the pool. (Docket Entry No. 132, at 10). The plaintiffs suggest that C.A. could have been one of those students given permission. The summary judgment record does not support this argument or suggestion. There is no competent summary-judgment evidence that Coronado gave C.A. permission to jump in the pool. The plaintiffs rely on their experts' reports, which contain opinions based on hearsay statements from students that Coronado gave certain students permission to jump

---

[5] The plaintiffs point out that C.A. was also part of another identifiable group: African-American teenagers. The plaintiffs argue that African-Americans in C.A.'s age cohort, as a group, have statistically higher drowning rates than their peers. (Docket Entry No. 132, at 6). The plaintiffs do not present C.A.'s membership in this class as evidence that C.A. was a known victim or a member of a discrete group of known potential victims. Rather, the plaintiffs highlight C.A.'s membership in this group as evidence that HISD created a dangerous environment in the natatorium. The plaintiffs need not rely on demographic data to establish that a pool lacking the safeguards the plaintiffs identify was a dangerous environment to a nonswimmer. The relevant inquiry, however, does not end there. The plaintiffs must also establish that HISD knowingly placed C.A. into that environment and was deliberately indifferent to whether he succumbed to the danger. This the plaintiffs cannot do based on the summary-judgment record.

into the pool.  (*See* Docket Entry No. 132, Exs. A–E).  Although experts are allowed to offer opinions based on hearsay testimony that would otherwise be inadmissible, the plaintiff cannot use the underlying hearsay testimony for the truth of the matter asserted.  *See, e.g.*, *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1982) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, but not as general proof of the truth of the underlying matter." (citing FED. R. EVID. 703, 802)).

The plaintiffs' evidence that Coronado gave some students permission to jump into the pool is not accompanied by any competent summary-judgment evidence that Coronado knew C.A. could not swim.  Without evidence of this knowledge, there is no basis for an inference that giving such permission would specifically place C.A. at risk of drowning.  *See, e.g.*, *Dixon*, 2012 WL 6019053, at *3 ("[W]e have been offered no evidence suggesting that [the student-assailant]'s behavior was ever focused upon [the student-victim] such that she would have been the 'known victim' of an unprecedented assault. . . . [The victim] was merely one student among many who faced a generalized risk resulting from the school's attempt to integrate a mentally disabled child into a normal school environment."); *Armijo*, 159 F.3d at 1264 (describing the "limited and specifically definable group" as "special education students *who have expressed threats of suicide*" to school employees (emphasis added)); *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993) (explaining that the class of drivers on a highway was sufficiently identifiable as to the risk the police created — allowing a drunk driver's drunk passenger to drive — because the officers could easily tell that other motorists were on the roads); *see also Dixon*, 2012 WL 6019053, at *3 ("As our cases illustrate, the state-created danger theory requires a *known victim*, and the fact that a school's policy or procedure presents a risk of harm to students in general is inadequate to satisfy this

15

requirement."); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994) ("[T]he environment created by the state actors must be dangerous [and] they must know it is dangerous . . . ."). In this case, the evidence is undisputed that Coronado had reason to believe that any student who could not swim had stayed out of the pool. Based on the present record, the summary-judgment evidence shows that if Coronado had permitted students to jump in the deep end, she did not know the group she had permitted included an individual susceptible to the danger.[6]

The plaintiffs argue that HISD did know that C.A. could not swim because of the 2005 athletics-department form C.A.'s parents signed. This argument is not supported by the record. As explained in this court's qualified-immunity opinion, there is no summary-judgment evidence that

---

[6] This court would reach the same conclusion even if it had granted the plaintiffs' Rule 56(d) motion for additional discovery in responding to HISD's motion for summary judgment. As this court explained in its ruling denying the plaintiffs' motion, the summary-judgment record contains the affidavit of Coronado and several other school employees, Coronado's deposition, and the statements of several student witnesses who were in the pool with C.A. (Docket Entry No. 128, at 9). None of those documents show that Coronado knew C.A. was a nonswimmer or that Coronado believed nonswimmers were even in the pool. The plaintiffs were not, and are not, entitled to additional discovery merely because they suspect that some of the defendants or witnesses are not being completely forthcoming. Under Rule 56(d), a party may move the court to defer consideration of an opposing party's motion for summary judgment or move the court for additional time to obtain affidavits and declarations or to take discovery if the party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. FED. R. CIV. P. 56(d). The party, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotation omitted). "[A] request to stay summary judgment under Rule 56[(d)] must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.*; *see also Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) ("The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." (quotation omitted)). No record evidence indicates that, were additional discovery to have been conducted, there is a likelihood additional facts would have surfaced showing that Coronado knew C.A. was a nonswimmer, or that HISD knew Coronado was permitting nonswimmers to jump into the pool's deep end.

would have imputed knowledge the school's athletic department gained in 2005 to Coronado, a science teacher supervising a nonathletic event, in 2008.  (Docket Entry No. 97, at 3 ("There is uncontroverted evidence in the record that Coronado, a science teacher who would not have received documents directed to the athletics department, did not know of C.A.'s inability to swim." (citing Docket Entry No. 68, Ex. 1, ¶ 11))).  The plaintiffs do not argue that HISD knew Coronado was permitting students — including those who could not swim — to do cannonballs into the pool's deep end or even to go into that part of the pool.  The plaintiffs instead argue that, based on the 2005 form, based on the alleged failure to obtain permission from each student's parents to have the student participate in the pool portion of the science experiment, and based on C.A.'s status as a black teenager, HISD could have expected that C.A. might be permitted to jump into the pool during the science experiment.  But this is a negligence argument.  The plaintiffs are arguing that HISD was negligent or grossly negligent in delegating to Coronado and Sikkema its responsibility to manage the pool and access to it.  Such an argument and the evidence supporting it would not satisfy the requirement for state-created-danger liability that the school district have placed a known victim in known danger.

For similar reasons, the summary-judgment record does not give rise to a factual dispute as to whether, or support an inference that, HISD was deliberately indifferent, as the state-created danger doctrine would require if it was recognized in this circuit.  The plaintiffs allege that HISD's alleged failures to enact or enforce various safety policies was reckless and conscience-shocking. The plaintiffs argue that the "failure to gain parental consent before letting students in the pool . . . . w[as] a gross departure from acceptable practices" and the fact "[t]hat there was no mechanism in place to ensure that Coronado and Sikkema knew about [the athletics] form is such

17

a gross departure from acceptable practices as to be 'shocking.'" (Docket Entry No. 132, at 7). But this is an argument that there is evidence that HISD was recklessly indifferent to the general harms that might result from its policies. It is not an argument that there is evidence showing that HISD was deliberately indifferent to known risks to C.A. This argument would not justify recognizing the state-created danger theory for the first time in this circuit. To the contrary, *Covington* made it clear that allegations that the school-board defendant had "'actual knowledge of the dangers created by the[ student-checkout] policies" in the form of parent complaints, "but . . . failed to take corrective action to reduce or prevent the danger'" were insufficient. 675 F.3d at 865–66. The Fifth Circuit emphasized that it has "consistently cautioned against finding liability under the state-created danger theory based upon an ineffective policy or practice in cases where the plaintiff's injury is inflicted by a private actor." *Id.* at 866. If a school board's actual knowledge of a policy's dangers did not show the requisite level of indifference to support a state-created danger claim in *Covington*, this court is not persuaded that the alleged constructive knowledge of potential danger at the pool in this case justifies applying state-created danger for the first time.

Even in jurisdictions that have adopted state-created danger, arguments similar to those the plaintiffs make here have failed to show a basis for liability under the doctrine. *See, e.g.*, *DeAnzona*, 222 F.3d at 1235 ("Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking."); *Uhlrig*, 64 F.3d at 574 ("[A] substantive due process violation requires more than an ordinary tort and . . . merely allowing unreasonable risks to persist . . . is not necessarily conscience shocking." (citing *Collins*, 503 U.S. at 128)); *see also Slade v. Bd. of Sch. Dirs.*, — F.3d —, — 2012 WL 6701869, at *2 (7th Cir. 2012) ("The cases generally understand 'recklessness' to mean knowledge of a serious risk to another person, coupled with

failure to avert the risk though it could easily have been averted.  This is the criminal meaning of recklessness, whereas in civil cases at common law it is enough that the risk, besides being serious and eminently avoidable, is obvious; it need not be known to the defendant." (citing *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 872 (7th Cir. 2012))).

The *Slade* case is particularly instructive because it involved circumstances very similar to those in the present case.  The parents of Kamonie Slade sued the Milwaukee school district and several of its employees after the child drowned on a school field trip while swimming at a public beach in a Wisconsin state forest.  *Id.*, 2012 WL 6701869, at *1.  The child's school had sought the parents' permission for students to "play in the water" on the field trip.  But the beach the teachers selected had no lifeguard and the school district's rules forbade recreational swimming without a lifeguard present.  The child, a poor swimmer, waded into the lake and drowned, either because of the current or because the slope of the lake's bottom dropped off.  *Id.*  The Seventh Circuit held that although the plaintiffs had plausible state-law negligence claims, their due process claim failed as a matter of law.  The court stated that under Seventh Circuit law, "it violates the due process clause for a government employee acting within the scope of his employment to commit a reckless act that by gratuitously endangering a person results in an injury to that person."  *Id.* at *6.  But school employees who expose a student to harm that results in his injury or death cannot create liability for the school district under a state-created danger theory.  *Id.* at *4.  Nor was the school district liable merely because it failed to "allocate[ ] greater resources to assuring the safety of children on field trips" such as by "ensur[ing] full compliance with all federal, state, local, and district laws and regulations."  *Id.* at *3.  The teachers that allowed the child to get into the water "may have been negligent" in failing to require the presence of a lifeguard.  The school principal "may have been

19

negligent too in failing to require a proper permission slip or to make sure that there would be a lifeguard on duty." *Id.* at *4. But negligence, even with tragic consequences, is not a constitutional violation:

> The defendants' negligence enhanced the risk to Kamonie, but negligence is not enticement, or deliberate indifference, or blindness to obvious dangers. Negligence is therefore not a basis for liability in a due process case, as the case law makes clear. Nor is gross negligence. Gross negligence is not recklessness (or "deliberate indifference") in either the civil or the criminal sense. . . . Had Kamonie told [his teacher] that although he was a poor swimmer he was going to try to swim across the lake, and she had replied "proceed at your own risk," her conduct would have been reckless endangerment; for she had brought him to a place of danger and he was in her charge yet she would be virtually daring him to risk his life. That is not this case. [Slade's teacher] did not know that Kamonie was a poor swimmer, or that if he was he would nevertheless wade too far into the lake, or that he or any other student was in significant danger. And [the teacher and principal] did take some steps to try to ensure the children's safety. . . . [The teacher] was as we said negligent; she was not reckless.

*Id.* at *4–5 (citations omitted).

Other cases involving policy failures resulting in child drownings have reached similar conclusions. In *DeAnzona*, for example, a child drowned in a lake at a park while participating in a city-run day camp program. The child's parents alleged failures by the director of the city's parks and recreation department, including inadequately training camp counselors, not providing counselors with cell phones, not requiring that campers be able to swim, not erecting a barricade around the park lake, not having a system to identify the location of the campers at any time, and not having a system to differentiate campers from noncampers. 222 F.3d at 1233–34. The Tenth Circuit rejected these failures as supporting a state-created danger, explaining that "knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *Id.* at 1235 (citing *Uhlrig*, 64 F.3d at 574). The court also explained that the plaintiffs could not show "reckless disregard for the risk" as required to trigger state-created danger because

20

the "failure to enact the various policies, which DeAnzona suggests amount to a constitutional violation, does not rise to the level of complete indifference [to risk]." *Id.* (citing *Armijo*, 159 F.3d at 1262–63).

In another drowning case, *Tobin v. Washington*, 2007 WL 3275073 (W.D. Wash. Nov. 5, 2007), the state licensed and relicensed a home to provide daycare services. *Id.* at *1, *4–5. The home was near a lake, which could be seen from the front porch. The licensing evaluator and reevaluator were aware of the lake and were aware that the home did not have a fence around the front yard, although this was required by law. The plaintiffs placed their two-year-old child in the home for daycare. The child left the home when the daycare provider's attention was focused on other children. Unattended and unsupervised, and with no fence or other barricade to prevent it, the child went into the lake and drowned. The parents sued under various legal theories including § 1983. *Id.* at *1–3. The parents claimed that the defendants were liable for a state-created danger for licensing and relicensing the home despite knowledge by the licensing agency that the home did not comply with the state law that required a front yard fence. *Id.* at *5–6. In rejecting this argument, the court held:

> The only action taken by the above named Defendants was the decision to license and renew the license of the daycare which Plaintiffs contend was not in compliance with state regulations governing fencing for daycares. That action is simply not sufficient to prevail. . . . [T]here was no affirmative state action: no involuntary exposure to harm as a result of a state actor's command. None of the state created danger theory cases, cited by either party or that have been found to state a claim in the Ninth Circuit, include a case where the state's affirmative conduct was the licensing of a facility which arguably was in violation of a regulation. Plaintiffs have failed to demonstrate any violation of their constitutional rights caused by the named Defendants' actions here.

*Id.* at *7 (citing *Ruiz v. McDonnell*, 299 F.3d 1173 (10th Cir. 2002)).

In the present case, the plaintiffs similarly make out a case for negligence, not recklessness.

21

There is ample, uncontroverted summary judgment evidence that HISD had some pool-safety measures in place; that Coronado and Sikkema, with the authority invested in them by HISD, failed fully to execute those safety measures; that neither Coronado nor other school employees at the pool on the day of the experiment knew that C.A. could not swim; and that if Coronado had permitted C.A. to jump in the pool, HISD did not know she had done so.  These facts, and the disputed facts taken in the light most favorable to the plaintiffs, do not defeat summary judgment.  The facts present in *Slade* could not preclude summary judgment of no liability under the state-created danger theory in a jurisdiction that has already recognized and adopted it.  The facts present in this case cannot do so in a circuit that has consistently refused to recognize or apply the doctrine.  This case is not a basis for finding liability under this doctrine for this first time in this circuit.

## IV.    Conclusion

HISD's motion for summary judgment is granted.  Final judgment is entered by separate order.

SIGNED on January 16, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge